Good morning, your honors. Katherine Young from the Federal Public Defender's Office for Appellant Patrick O'Reilly. I will reserve five minutes of my time for rebuttal and I'll try to watch the clock. All right. Mr. O'Reilly is challenging the District Court's findings that he violated conditions of supervision, and he's also challenging the sentence imposed for those alleged violations. Now, the first violation I'd like to turn to today is Allegation 5, which alleges that having been ordered by the court to not possess a firearm, ammunition, destructive device, or any other dangerous weapon, on December 5, 2024, Patrick Michael O'Reilly entered the Los Angeles Federal Building in possession of an illegal switchblade. An argument here is that the government failed to prove that Mr. O'Reilly possessed an illegal switchblade. We've got images of the knives that establish that they're not illegal switchblades. At the evidentiary hearing, the government produced no evidence that either of the knives is an illegal switchblade. Is that the question, though? I mean, is it not? Or is the question, was this a dangerous weapon under the terms of his release conditions? Actually, your honor, the government does argue in its answering brief that it doesn't have to prove that it's an illegal switchblade. But that's a factual finding made by the District Court that he entered the Federal Building in possession of an illegal switchblade. So I don't see how the District Court can make that factual finding if, in fact, the government now concedes it's not a switchblade. And we proved at the evidentiary hearing it wasn't a switchblade. We've cited law in the briefs that show it's not a switchblade. You've got the pictures of them that show that it doesn't have the mechanics of a switchblade. So there's no dispute that there wasn't a switchblade. But there's a clear factual finding by the District Court that he entered the Federal Building possessing a switchblade, which he clearly did not. And under those circumstances, I don't see how the allegation can stand. I guess the underlying question that interests me is the one Judge Brass asked, which is in the unusual world of probation revocations, the charging document, do you have any case that tells us that the charging document is what's material? In other words, it looks like 3583 says what's relevant is what the condition was. Here, no dangerous weapon. So in a way, and I'm just asking you legally, here it was the probation officer. Sometimes it's the U.S. Attorney's Office. They write the charging document. But why is it relevant what they say in it? How does that have anything to do? Does that restrict whether or not your client violated a condition the court imposed? Do you understand my question? I do understand your question. I think there's a Perez case cited in the briefs that says Right, but that's dicta. It does say exactly what you're saying. So that's a good answer. But the case was about evidentiary sufficiency. It didn't say, oh, the government has got to prove what it charges. What's the case that says the government has to prove what it charges if they add surplusage? Oh, it's an illegal switchblade or it's a switchblade that does or doesn't open. Do they have to prove what they allege? I think I do. I don't think I have a case cited in the briefs to that effect. I think the principles and the rules of charging instruments and specifically in supervision require the government. But there's no grand jury involved. So variances in constructive amendments, that world of protection doesn't apply. We're looking at 3583 and all it says is, was the condition violated? But they have to prove how the condition was violated. Yes. And here we've got two allegations with respect to the entrance into the federal building. One's a pocketknife. One's a switchblade. So the government is notifying Mr. O'Reilly that he's going to be asked to defend against an allegation of a switchblade. And I think due process requires that they prove that allegation. Because a switchblade is a... Remedy, then. I mean, if you're right, what would be the remedy? That the charging document would have to be revised and this would go back to consider whether these are dangerous weapons? I think that allegation would have to be vacated. Because the government now concedes they did not prove it's an illegal switchblade. Well, the petition itself alleges that he violated the condition of possessing a dangerous weapon, right? So had they not further specified that it was, in fact, an illegal switchblade, it wouldn't be a problem, even under this petition. Well, I think then you might have a problem with, is he receiving adequate notice of what he's alleged to have done that day? Because they do have to... Is that really a question, though? I mean, it seems like he has adequate notice of what he... He came into the federal building with two knives. He's on notice of that. I mean, I hear you. There could be a notice problem. I just... Is there one here? Well, I think there is because, especially when you've got them separate into two allegations. I mean, defense counsel, when she's approaching the hearing facing an allegation of a switchblade, is prepared to controvert the fact that it's not a switchblade. And then at the last minute, with respect to allegation six, we argue there's a due process violation because at the last minute the court adds a new allegation that there's an illegal pocketknife. I think recognizing that there's a sufficiency problem... If he was asked to come in the federal building and he had a gun, would he be able to defend that it had its safety on? I don't think so. In other words, isn't that similar? Oh, this switchblade actually mechanically doesn't open. Isn't that similar? It might be, but I think that's not the fact here. I mean, he was alleged to have possessed a switchblade. But knives are dangerous weapons, broadly speaking, or you would say... I know the government does cite cases to that effect, but I think that's kind of an overreach. Because obviously, just saying a knife is a dangerous weapon, there's millions of different kinds of knives. I think the district court was fair in saying these really weren't butter knives. No, but I think everyone was assuming that they were dangerous weapons. And the probation officer testified he's entitled to have pocketknives on supervision. And in fact, in the course of preparing for this, some substantial percentage of the population carries pocketknives. They're not inherently dangerous weapons. And he was entitled to have them outside and wander around outside with them. The probation officer testified to that. He was entitled to have pocketknives. So it becomes an issue when he enters the federal building where there's an elevated requirement that you can't have a dangerous weapon. And so then the question would be, as far as we're concerned, if the pocketknife is a dangerous weapon. And did he enter voluntarily because he was only under the direction of his probation officer that he entered the federal building? So I think there's another question. If you want me to move on to Allegation 6, which is regarding the pocketknife, I will. Have we covered the switchblade issue or do we need further discussion on that? Well, your argument is it wasn't shown to be illegal or it wasn't even shown mechanically to work. It's not a switchblade. But therefore you have to win that the government has to prove what it charged. That's what my position is. And you would agree that regardless of this discussion about whether the government proved what it charged, it was a violation of the condition in terms of just being a dangerous weapon, or you would not agree? No, I would not agree with that. All right. And if you want, that I think is relevant to Allegation 6, which I'll move on to. Allegation 6 we have two challenges to. One is the due process nature of it. Because in the middle of the evidentiary hearing when defense counsel was on notice that Mr. O'Reilly was being charged with possession of a switchblade, all of a sudden an allegation of possession of a pocketknife was added. And we argue that it was a due process violation because he didn't receive advance notice of that. Rule 32-1 just says written notice. I know. It does say notice. Is there any case that says you have to do advance? Well, I was looking for that. Me, too. Because you would think that notice implies advance notice. It's not notice if you hand something. Yeah. Jenks is required, and that's only required when the witness testifies. So it could all just be happening right in the middle of it. These revocation hearings combine the proof plus the sentencing. It's all just a big jumble. Yes, but I think that even then notice is required. And notice doesn't really mean anything if it's handed as the witness is walking up to the witness stand. I mean, in this case, the purpose of notice is to give someone notice of what's being charged so they can prepare the defense to it. And maybe if you're alleging that a pocketknife is inherently dangerous, she would want to research pocketknives or what he was allowed to do with them. You agree this is reviewed for plain error? Yes. It's an interesting question, but it's problematic. Yes. If he had an initial appearance, he had a detention hearing, he had multiple revocation, this gentleman knew there were two knives. Fair to say? He has counsel repeatedly. He's in front of federal judicial officers. He knew that there were two knives, but until the middle of the evidentiary hearing, he understood he was being charged with switchblades, which they clearly are not.  I'm sorry. Was there prejudice resulting from that? Well, I think there's prejudice because had defense counsel had more time, she could have had a more robust defense. Counsel asked for more time and was denied? Well, the district court said, and there had been a previous request for more time on another instance, which the district court had denied. In this case, the district court said, I'll give you a few minutes to talk with your clients if you want before we proceed with the evidentiary hearing. So I think defense counsel felt perhaps that asking for more time would be futile. But the district court did make clear that they were proceeding with the evidentiary hearing with only a few minutes for preparation. So I would argue that an objection was not required in this circumstance. So we argue that there wasn't a due process protection here. But also, we're arguing that these pocket knives were not necessarily dangerous weapons. The probation officer testified that he was allowed to have pocket knives on supervision. He, when he approached the federal building, did not intend to go outside, inside the federal building. He intended to meet the probation officer and to conduct their business outside the federal building because he had a previous difficulty since he's deaf, following the instructions of the security inside, and he'd had the difficulty. So he didn't want to go inside. He assumed they were going to do their business outside the building. She didn't tell him that she was going to direct him to go inside the building because she wanted to arrest him for the Home Depot incident. So he assumed he wasn't going to the federal building. He's carrying all his possessions because he's in a hotel. And so our position is he only went into the federal building because she directed him to do so, and he always followed her directions. That's what even she agreed to. So he walked over the threshold, and then all of a sudden something that was contained potentially problematic. So we would argue that pocket knives are not inherently dangerous. He's allowed to possess them. The only thing that made this one difficult was crossing the threshold of the federal building, but that doesn't relieve the government of its obligation to prove it was a dangerous weapon. There's a little irony, I guess. He gets violated when he goes in something, and then he gets violated when he gets out of the Home Depot. His problem is going in and out of places he shouldn't go. Yeah. Well, I think in this problem, it is unfortunate that it was because he was so determined to follow the instructions of the probation officer that something completely innocent became problematic. But I would argue that, nonetheless, the government still has an obligation to prove that it's a dangerous weapon. And it hasn't done so. I don't even think it's actually proved the length of the blade, because there was only testimony from Castillo-Lopez, but someone else told him it was four inches. I thought there was a photo in the record. There is a photo, but there's nothing in that photo, like a ruler or something, that can give us a measurement of what it is. What's really the relevance of him entering the building, other than that's where this was discovered, right? He's not allowed to have a dangerous weapon anywhere. Well, that kind of begs the question, because is this a dangerous weapon? The probation officer testified he's allowed to have pocket knives. Right, but I guess you're making the point that he was not sure he was going into the building, which may be true. And I'm asking myself, is that relevant to whether this condition was violated? I think what makes it relevant is that there are elevated requirements inside the federal government, inside the federal building, which the government is trying to import into this case, even though they haven't charged him with violating those requirements, and they can't because he wasn't on notice. One of the elements of violating that law, of bringing a dangerous weapon into a federal building, is conspicuous notice being posted. And they haven't met that element. But they're trying to import the additional elements of what you can't bring into a federal building into the fact that he possessed pocket knives. And we're arguing that shouldn't be done, but in any event, they haven't proved that it is. How damaging to the law would it be if we ruled that any knife is a dangerous weapon, leaving it up to probationees to move to modify the conditions if they need their Swiss Army knife, for example? How bad would that be inconsistent with law, if we just said, as a blanket rule, if you're prohibited from a dangerous weapon, that means any knife? Well, I think even in the federal building, the prison ---- No, I'm just talking about out in society. You just can't have a knife. I guess you'd run into problems. How do I eat? Yeah. I mean, I think that's a problem. But I think even in the federal building, a dangerous pocket knife under two and a half inches is specifically accepted from the definition of dangerous weapons. That's why I would say pocket knives are not inherently dangerous. Even on, I think it's 18, 830 or 930. There's a definition of dangerous weapons. A pocket knife under two and a half inches is specifically accepted from that definition. So we would argue if you have something over two and a half inches, which we're saying hasn't been proved here, you would have to prove it's a dangerous weapon. But with respect to two and a half inches, it's absolutely categorically not a dangerous weapon. I know you wanted to save a little bit of time. Okay. Thank you. Oh, this is save time. I forget. I always forget. I thought you were still on your principal time. Good morning, Your Honors. May I please the Court. James Santiago, appearing on behalf of the United States of America. The supervised release evidentiary and sentencing hearing was fair, thorough, and the defense had a full opportunity to present its arguments regarding the evidence and the sentence. But the district court rejected those arguments and found defendant in violation of multiple conditions of supervised release, and the district court should be affirmed. Now, focusing, the previous discussion was primarily about the knives. That's what really the focus has been on today. Well, my focus is much more what I think could be very consequential legal questions. So there are two. One is, under Rule 32.1, when do you have to give notice? When does the government think is the latest moment they can say, we've got something else we want to prove? So the notice question is one. And then the other one is, under 3583, are the charging instruments, whether it comes from probation or the U.S. Attorney's Office, is it irrelevant what the government says it's going to prove? Those are my two questions. Are we really, no matter what the government writes, and the guy comes into court preparing to defend, the government writes, oh, you know, you've got a dangerous weapon on this day. It's a knife. They think it's a knife. Then you walk into court and the government says, well, actually, when you were arrested, you had a gun. That's a dangerous weapon, too. Both are violations of the condition. Get ready to defend the latter. Yes, Your Honor. So addressing your first point, 32.1, when is sufficient notice? I'm not sure what the exact bright line is, but it certainly wasn't crossed here. The defendant ñ I know. I'll admit to you that I don't think it was because of the multiple hearings. I'm just wondering if the government has, researching the case law, told us, when's the latest moment the government can say to a defendant as they walk into a hearing, here's what you have to defend against. I'm not aware of anything specifically on point, Your Honor. I think it was the Tam case talked about some particularity regarding the petition. But in this case ñ  Okay. I understand. I don't mean to ruin it, but I understand. In this case, it does seem like he knew throughout he had counsel. So what about the bigger question, the second one? Can the government overcharge and underprove? Well, I mean, in cases specifically regarding supervised release violations, here the United States Probation Office presents a violation document, and there's two. There's the original one with, I believe it was three violations, and then a second one with the violations four and five. And at the hearing, it's the sixth one. And considerably, the government was caught off guard. The defendant was surprised by that. But the court was the one that raised that and confirmed with both parties, like, hey, the fifth allegation that was originally two knives, that was alleged in the violation report, it's now split up for some reason. My concern is not the due process one. My concern is just what I said, which is can — is it irrelevant what the allegation is? Because all that we look to is the underlying condition. No. No, Your Honor. I think you have to do — you do have to look at the allegation. And what mattered for the allegation here — Not what we look at. The government's got to prove to a preponderance what was alleged. So you're accepting —  You had to prove an illegal switchblade. Not necessarily, Your Honor. The government had to prove that it was possession of a dangerous weapon because that is the condition of supervised force. But that's what I just asked you. Yes. That means it doesn't matter what probation put in the original or the amended petition. It just means we go back to the condition. Is that your position? Not necessarily, Your Honor. Because I think depending — the defendant does need — deserve notice about what is going to actually be litigated. Here, in this specific instance, I do not think it matters whether or not it included the condition a switchblade knife or a pocket knife. Those were just modifiers to what the conduct really was. Was it a dangerous weapon? And in this instance, there was no harm with the way the allegations were written. The condition, as you pointed out, Your Honor, is defendant is not allowed to have a dangerous weapon. And the debate was, hey, is this a switchblade knife? That was not proved. There was no specific testimony. The government concedes that regarding which knife was the switchblade or which knife was the pocket knife. But the photograph speaks for itself. These were two dangerous weapons that were obvious to anyone. One being at least four inches, and there was testimony regarding that, one of the knives having shark teeth on it, and the other with a skull with an American red, white, and blue colors on it. These are not butter knives, and these are not box cutters, something that a vendor would have. So given what is here before us in this case, Your Honor, the knives, yes, they are dangerous weapons, and it was enough that identified that there was a knife was sufficient. Dangerous weapons, well, what could be a dangerous weapon? A vehicle could be a dangerous weapon, for example. So it's just possession of. It doesn't matter in the Federal building. It does not matter that being a – Okay, so I don't mean to be sarcastic, but then is he in violation at dinner when he's eating using a knife utensil? Not necessarily, Your Honor, and I appreciate the argument because, I mean, looking at the totality of circumstances, the Court is in the best position to evaluate based on the violation report, the testimony it saw, about here are photographs of two dangerous weapons. Just looking at them, these are dangerous weapons. They are obviously not butter knives. They are obviously not box cutters. And what's alleged is that there's a dangerous weapon. Okay, it was a dangerous weapon that was either a switchblade or a pocket knife, which is which, it doesn't matter in this instance. The fact is he did have two knives, and it is part of the consideration that it was in a Federal building. He was not charged specifically with a crime regarding these two knives. It was just a violation of the supervised release condition, and the case law says there doesn't have to be a conviction. There doesn't have to be a charged crime. Just a violation. And that ties into the fact that the violation of the refusing of the psychological evaluation, that's not a crime either. So I'm not sure if that's necessarily addressing your question, Your Honor, but they're just ---- I'm just thinking, you know, if you're in the world of original indictments and the government puts a speaking indictment and it alleges, it's bound to prove it. It can't vary from that, nor can it constructively amend it. That's the world of sort of Fifth Amendment protections. I'm a little baffled. I'm just honestly inquiring. In the world of revocations, do all we do is look back, no matter what the government writes, and they come in prepared to defend, oh, suddenly they think, it's not going to be so easy to prove these illegal switchblades, these pocket knives, but lo and bold, when we arrested him, he had a gun. Now we're just going to go on the gun as a dangerous weapon. Or would that be too much of a variance that it triggers notice issues? It really does, and I hate to say this, it does depend, Your Honor, on each specific situation. I mean, here the probation officer is responding. She already planned an infection arrest on three other violations. He shows up for that arrest, and then, lo and behold, there's two additional violations. Now in the charging document here, supervised release, so not necessarily the same as an indictment or something that was before a grand jury, something that was written typically by the probation office, and here in this case amended at the hearing. But there was enough in this that the defense was able to prepare and present an argument, both at the initial appearance, at the preliminary hearing, where this was argued substantially regarding whether or not it was a switchblade, and even the magistrate judge says, like, why are we even talking about this? It's the fact that he possessed dangerous weapons. Why did it say switchblade? I'm not aware of that, Your Honor. That's the way it was drafted. It's a little bait and switch, though, right? You allege something sort of strange, an illegal switchblade, so they come in prepared to defend against that. They say, well, we actually don't have to prove anything we said because it's just a dangerous weapon. So, Your Honor, both the government and defense counsel were admittedly caught off guard at the evidentiary hearing regarding the fact that it was actually two violations that the probation office had split into two. Do you know, from your U.S. attorney's office, do you never file the motions to revoke? Is it always the probation office? I can't speak for Blanket, but in this occasion, Your Honor, it was the probation offices that filed these, to answer your question. What about the pocket knife? Do you agree your own probation officer, I shouldn't say yours, works for the judiciary? The probation officer testified he could have it, he could possess it under the conditions, just not in a federal building? That's a bit of a wrinkle, isn't it? Yes, Your Honor. I don't remember that specific exact testimony. Well, it's in the brief. That's sort of important. Did the probation, do you disagree what she said? The probation officer said he could have a pocket knife consistent with his conditions, only not if he goes in the building. Yes or no? Do you agree with that as a factual point? Yes, Your Honor. So that's a problem here, because she then says you go in, so she sort of violates him. But I think looking at the totality of what unfolded that morning, they weren't preparing to make these arrests regarding pocket knives. What happened was he goes through security, they find one knife, the arrest doesn't go as planned, he's arrested prematurely by the security services at the front of the building, bring him upstairs, and it was only then, on the search of his person, another search at this point, they'd already done a search down at the front, that they find he's in possession of a second knife. So here, just looking at the facts and what came out, this wasn't a butter knife. It was not a pocket knife. Well, what is a pocket knife? It's just a knife that you put in your pocket? What is it? I mean, again, I don't know. What is a pocket knife? It's not very clear, Your Honor. I mean, I know the defense counsel cited the statute regarding there's two and a half inches is the threshold for possession of a dangerous weapon, which is a crime, which was not charged here. The other statutes that defense counsel cites in this brief are from a chapter regarding the postal service and another from trade and commerce. Not necessarily on point, but even looking at the sentencing guidelines, the definitions aren't necessarily the most helpful in the commentary. It's obvious what a firearm is, an ammunition. Dangerous weapon, that is open to some level of interpretation. But here, using its common sense, I think the district court made the appropriate distinction that these were, in fact, dangerous weapons just from looking at them. And, yes, it is a wrinkle like you identified that, yes, there's this other issue. It was brought into a federal building, but that wasn't even necessarily charged. On the state, he possessed these two weapons. That's just another fact that came out of where it was at. Counsel said that it's problematic in this particular case because the district court made a specific finding that it was, in fact, an illegal switchblade. And if the government hasn't proven that, is that a problem in light of the district court's finding that this falls within the dangerous weapons prohibition? I don't think I understood your first part, Your Honor. Well, counsel was saying that there was a specific factual finding by the district court that he, in fact, possessed an illegal switchblade. Right? You're saying it's irrelevant whether the government eventually proved that up or not. Is it a problem that there's a specific finding of a switchblade possessed by the defendant here? There could be, Your Honor. Even though the district court also made the finding that he violated the condition of not possessing a dangerous weapon. There could be an issue with that, Your Honor. I mean, there was no testimony specifically, this is the switchblade, this is the pocket knife. The only evidence regarding this was the length. They found a 4-inch knife when he went through security, as well as the photograph. That's conceivably all there is regarding there. So the district court, looking at everything it had seen, still found, made the decision that the evidence was overwhelming that these were dangerous weapons and that they were not butter knives. That's what's in the transcript, Your Honor. So there really wasn't much more beyond that. It could be an issue, but here there's nothing that really does affect the fundamental fairness of the proceeding. Yes, he had noticed a bit with the supervised release violation reports that he was in possession of two knives. Defense counsel had known all along, even going back to the preliminary hearing where they first argued this issue with the switchblades. It was only at the evidentiator hearing where the issue comes up, is it two different ones? Is there sufficient notice? But, Your Honor, everybody was ready to proceed on that day. The probation officer, the court, which is the party that actually raised the issue, the two parties, and defense counsel, after they sat down and read it, and she went over it with her client. So looking at everything, yes, there could be a potential issue regarding that, whether or not it is, which is the switchblade, which is the pocket knife. But at the end of the day, it doesn't make a difference because nothing affected the fundamental fairness or the integrity of the court regarding this issue with the knives. Quickly on the grand theft. Yes, Your Honor. What do you understand their allegation to be as to factual insufficiency? It's a Sienter problem? He says the Home Depot manager told him he didn't have to pay? Or he says I needed to go out and check my phone and then I was going to come back in and pay? Or is it just mental distress, didn't really understand what I was doing? I think it's really the third element under the state law regarding his intent. What did he intend to deprive Home Depot of? There was no testimony and there was no evidence regarding his mental state at the time. There's the psychological evaluation that comes subsequent to that. So really the issue is looking at everything. Did he have the intent? But the government is not required to prove a crime. The only issue is that he was arrested for grand theft. And as the district court said, the evidence was overwhelming. The evidence was from two precipient witnesses, one of them primarily being the loss prevention officer, looking at everything that happened today. He's watching him for over an hour. He's seeing the types of items he's putting in his shopping cart. They're not just random items, they're top stock items with a high dollar value that are some of the ones that are most stolen. He's wearing a contractor's vest. He's telling everyone he's a vendor for over an hour. He pays for some items, but not all items. And this is in the government's brief. His shopping cart is overflowing. There's approximately, I think it's at least 40 different items and approximately 70 total when there's multiple types of specific items. I see I'm over your arm. May I proceed? Yes, please. Wrap it up, please. And $1,300 total. So the fact that he paid for some, took it off the property, and was on the street. All that in light of, I think, specifically the Loma Yoma case, that was sufficient. Thank you, counsel. Thank you. You're on. The government submits. Thank you. Thank you. The first issue I want to turn to is Judge Higginson's comment about how the line of due process wasn't crossed here because there were multiple hearings. And I just want to emphasize, up until the moment in the middle of the evidentiary hearing, defense counsel was only on notice that he was being charged with an illegal switchblade. And there's evidence in the record that she had researched that, that she had a lot of evidence that wasn't a switchblade. That's what she was prepared to controvert. And the rug was pulled out from under her in the middle of the evidentiary hearing. That's the due process issue. And the — I wanted to turn to the Home Depot issue for a minute. Our argument is that there was no intent here because he was decompensated. There was a psychiatric evaluation that was filed with the court the day before the evidentiary hearing, and all the evidence cited by the prosecutor is supporting that because they're saying that he has a shopping cart full of top stock items. In fact, what happened was he has a shopping cart full of 70 items. Only two of them are over $100. There's a lot of items that are $1 or so. This is not the act of someone who's really intending to thief. It's someone who's decompensated. And unless there are any further questions, I see my time is up. Thank you very much, counsel, to both sides for your helpful arguments this morning. The matter is submitted.
judges: Higginson, NGUYEN, BRESS